### STATE OF CONNECTICUT *v.* MICHAEL A.*
### (SC 18464)

Norcott, Katz, Palmer, Zarella and McLachlan, Js.

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

Argued March 22—officially released August 17, 2010

*Glenn W. Falk*, special public defender, for the appellant (defendant).

*Sarah Hanna*, deputy assistant state's attorney, with whom, on the brief, was *Kevin Lawlor*, state's attorney, for the appellee (state).

### Opinion

NORCOTT, J. The defendant, Michael A., appeals[1] from the judgment of the trial court resentencing him to a total effective sentence of seventeen years imprisonment, after remand from the judgment of the Appellate Court, which had reversed his conviction of sexual assault in the second degree in violation of General

---

[1] The defendant appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Statutes (Rev. to 1999) § 53a-71 (a) (1),[2] and affirmed his conviction of risk of injury to a child in violation of General Statutes (Rev. to 1999) § 53-21 (a) (2), as amended by Public Acts 2000, No. 00-207, § 6 (P.A. 00-207).[3] *State* v. *Michael A.*, 99 Conn. App. 251, 254, 913 A.2d 1081 (2007). On appeal, the defendant claims that: (1) the trial court improperly resentenced him on the risk of injury to a child conviction because the Appellate Court's order was limited to reversal of the sexual assault conviction; and (2) the trial court's resentencing order, crafted under the persistent serious felony offender statute, General Statutes (Rev. to 1999) § 53a-40 (c) and (j),[4] as amended by Public Acts, Spec. Sess.,

---

[2] General Statutes (Rev. to 1999) § 53a-71 (a) provides in relevant part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and: (1) Such other person is thirteen years of age or older but under sixteen years of age and the actor is more than two years older than such person . . . ." All references in this opinion to § 53a-71 (a) are to the 1999 revision unless otherwise indicated.

[3] General Statutes (Rev. to 1999) § 53-21 (a), as amended by P.A. 00-207, § 6, provides in relevant part: "Any person who . . . (2) has contact with the intimate parts, as defined in section 53a-65, of a child under the age of sixteen years or subjects a child under sixteen years of age to contact with the intimate parts of such person, in a sexual and indecent manner likely to impair the health or morals of such child . . . shall be guilty of a class C felony." All references in this opinion to § 53-21 (a) are to the 1999 revision, as amended by P.A. 00-207, § 6, unless otherwise indicated.

We note that the information and judgment file indicate that the charge and conviction were made under § 53-21 (2). We attribute the erroneous statutory reference to a scrivener's error and will refer to § 53-21 (a) (2) for consistency.

[4] General Statutes (Rev. to 1999) § 53a-40 (c), as amended by Public Acts, Spec. Sess., June, 1999, No. 99-2, § 48 (P.A. 99-2), provides in relevant part: "A persistent serious felony offender is a person who (1) stands convicted of a felony, and (2) has been, prior to the commission of the present felony, convicted of and imprisoned under an imposed term of more than one year or of death, in this state or in any other state or in a federal correctional institution, for a crime. . . ." All references in this opinion to § 53a-40 (c) are to the 1999 revision, as amended by P.A. 99-2, § 48, unless otherwise indicated.

We note that the information and judgment file indicate that the charge and conviction with respect to part B of the information were made under § 53a-40 (b). In 1999, the General Assembly amended § 53a-40 to include a new subsection (b) for persistent dangerous sexual offenders. See P.A. 99-2, § 48. Throughout the file, however, the proper reference is made to the

June, 1999, No. 99-2, § 48 (P.A. 99-2), cannot stand because the defendant did not knowingly, intelligently and voluntarily waive his right to a jury trial on the issue of whether an extended period of incarceration would best serve the public interest. We disagree and, accordingly, we affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. In November, 2000, the state charged the defendant in a two part information with one count of sexual assault in the first degree in violation of General Statutes (Rev. to 1999) § 53a-70 (a) (1)[5] and one count of risk of injury to a child in violation of § 53-21 (a) (2). The defendant was tried before a jury, which, in June, 2004, returned a verdict finding him guilty of risk of injury to a child and not guilty of sexual assault in the first degree.[6] The jury did, however, find the defendant guilty of sexual assault in the second

substantive charge as "persistent serious felony offender," which implicates subsection (c). We therefore attribute the erroneous statutory reference to a scrivener's error and will refer to § 53a-40 (c) for consistency.

General Statutes (Rev. to 1999) § 53a-40 (j), as amended by P.A. 99-2, § 48, provides: "When any person has been found to be a persistent serious felony offender, and the court is of the opinion that such person's history and character and the nature and circumstances of such person's criminal conduct indicate that extended incarceration will best serve the public interest, the court in lieu of imposing the sentence of imprisonment authorized by section 53a-35 for the crime of which such person presently stands convicted, or authorized by section 53a-35a if the crime of which such person presently stands convicted was committed on or after July 1, 1981, may impose the sentence of imprisonment authorized by said section for the next more serious degree of felony." All references in this opinion to § 53a-40 (j) are to the 1999 revision, as amended by P.A. 99-2, § 48, unless otherwise indicated.

[5] General Statutes (Rev. to 1999) § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person (1) compels another person to engage in sexual intercourse by the use of force against such other person or a third person, or by the threat of use of force against such other person or against a third person which reasonably causes such person to fear physical injury to such person or a third person . . . ." All references in this opinion to § 53a-70 (a) are to the 1999 revision unless otherwise indicated.

[6] For a detailed recitation of the factual basis for the defendant's convictions, see State v. Michael A., supra, 99 Conn. App. 254–55.

degree in violation of § 53a-71 (a) (1) as a lesser included offense of sexual assault in the first degree. After the defendant entered a plea of nolo contendere with respect to part B of the information charging him as a persistent serious felony offender under § 53a-40 (c), the trial court rendered a judgment of conviction in accordance with the jury's verdict and sentenced him pursuant to § 53a-40 (j) to a total effective sentence of twenty-four years imprisonment, followed by ten years special parole and lifetime sexual offender registration.[7]

The defendant appealed from the judgment of conviction to the Appellate Court, which reversed the conviction of sexual assault in the second degree. *State* v. *Michael A.*, supra, 99 Conn. App. 254. The Appellate Court concluded that the trial court improperly had instructed the jury that it could find the defendant guilty of sexual assault in the second degree as a lesser included offense of sexual assault in the first degree; id., 262; which deprived the defendant of his "constitutional right to a fair trial . . . ." Id., 263. The court reversed the judgment "only as to the conviction of sexual assault in the second degree and . . . remanded with direction to render judgment of not guilty as to that offense only." Id., 274.

On remand, the trial court held a resentencing hearing on April 4, 2008. The trial court vacated the defendant's original sentence and, over his objections,[8] resentenced him to a total effective sentence of seventeen years imprisonment on the risk of injury to a child conviction, with no special parole, but with lifetime sexual offender registration. The new sentence, like the original sentence, reflected sentence enhancement under the per-

[7] The original sentence was structured as follows: twelve years imprisonment plus five years special parole for each charge, to be served consecutively, for a total effective sentence of twenty-four years imprisonment.

[8] The defendant argued that the Appellate Court's remand order did not give the trial court jurisdiction on remand to resentence him.

sistent serious felony offender statute, § 53a-40 (j). The trial court also renewed its finding, at the state's request, that the defendant's history and character, as well as the nature of his criminal conduct, indicated that extended incarceration would best serve the public interest. This appeal followed.

On appeal, the defendant claims that: (1) the trial court lacked the authority to resentence him on the risk of injury to a child conviction because the Appellate Court's order reversed only the sexual assault conviction; and (2) the trial court's resentencing order, crafted under § 53a-40 (j), the persistent serious felony offender statute, was improper because he did not knowingly, intelligently and voluntarily waive his right to a jury trial on the issue of whether an extended period of incarceration would best serve the public interest. We address each claim in turn and set forth additional relevant facts where necessary in the context of each claim.

I

We first address the defendant's claim that the trial court did not have the authority to resentence him on the risk of injury to a child conviction. Specifically, the defendant argues that the Appellate Court's remand order explicitly was limited to a reversal of the conviction of sexual assault in the second degree and did not authorize the trial court to fashion an entirely new sentence. The defendant also claims that the procedural posture of this case—a partially successful appeal and remand order—distinguishes this case from past precedent in which this court applied the "aggregate package" theory of sentencing (aggregate package theory), under which, inter alia, trial courts may reconstruct sentences following a partial reversal of a multicount conviction. In response, the state contends that the trial court properly resentenced the defendant under the aggregate package theory and that the Appellate Court's

order should be interpreted in light of that court's entire opinion and not read so restrictively. We agree with the state and conclude that our recent decision in *State* v. *Wade*, 297 Conn. 262, 998 A.2d 1114 (2010), controls the outcome of this claim.

In *State* v. *Wade*, supra, 297 Conn. 275, we recently concluded "that the aggregate package theory . . . applies regardless of the underlying reason for remand." The defendant in *Wade* had challenged his new sentence partially on the ground that the aggregate package theory could not be applied when the reversal of conviction was based on insufficient evidence. Id., 272. We rejected the defendant's claim that the direction of a judgment of acquittal or reduction of a conviction to one that carries a lesser sentence precludes the trial court from restructuring a sentencing package originally imposed on a multicount conviction. Id., 268. We concluded that "the trial court was not bound by its previously imposed sentence on the [unaffected convictions] but, rather, was free to restructure the sentence on those counts in any way necessary to effectuate its original sentencing intent, so long as the revised total effective sentence did not exceed the original sentence . . . ." Id., 275. Similarly, in the present case, the trial court properly resentenced the defendant in accordance with its original sentencing intent.

Moreover, we disagree with the defendant's claim that the Appellate Court's remand order specifically precluded the trial court from restructuring the original sentence in toto. The Appellate Court's rescript reads in its entirety: "The judgment is reversed only as to the conviction of sexual assault in the second degree and the case is remanded with direction to render judgment of not guilty as to that offense only. The judgment is affirmed in all other respects." *State* v. *Michael A.*, supra, 99 Conn. App. 274. "We have rejected efforts to construe our remand orders so narrowly as to prohibit

a trial court from considering matters relevant to the issues upon which further proceedings are ordered that may not have been envisioned at the time of the remand." (Internal quotation marks omitted.) *State* v. *Wade*, supra, 297 Conn. 276. Although the remand order twice included the limiting word "only" with respect to its direction, we agree with the state that, given the multiple convictions from which the defendant appealed, the Appellate Court simply was clarifying that the reversal was limited to the sexual assault conviction. Furthermore, the Appellate Court's opinion did not at any point address resentencing, nor did the remand order contain specific language restricting the trial court's discretion with respect to resentencing. See *State* v. *Michael A.*, supra, 256–63, 274. Thus, once the trial court followed the remand order and vacated the conviction of sexual assault in the second degree, under the aggregate package theory, it was free to "reconstruct the sentence in any way necessary to ensure that the punishment [fit] both the crime and the defendant, as long as the final sentence [did] not exceed" the original sentence of twenty-four years imprisonment. *State* v. *Miranda*, 260 Conn. 93, 130, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002). We conclude, therefore, that the trial court properly resentenced the defendant on the one remaining count of risk of injury to a child.

II

We next address the defendant's claim that the trial court's resentencing order was improper because he did not knowingly, intelligently and voluntarily waive his right to a jury trial on the issue of whether an extended period of incarceration would best serve the public interest. Specifically, the defendant argues that: (1) his original 2004 preappeal waiver of his right to a jury trial, as incorporated in his nolo contendere plea, only waived a jury trial on the threshold question of

whether he was a persistent serious felony offender under § 53a-40 (c); and (2) even if his original waiver did encompass the question of whether an extended period of incarceration was in the public interest under § 53a-40 (j), that waiver should not be further extended to his 2008 resentencing proceedings. The state contends in response that the defendant validly waived his right to a jury trial on the public interest determination as evidenced by the totality of the circumstances. We conclude that the defendant's original nolo contendere plea on the persistent serious felony offender charge set forth in part B of the information necessarily and validly waived his right to a jury trial as to both his guilt under part B of the information and the public interest determination, and also that his 2004 waiver validly applied to the 2008 resentencing proceeding.

As an initial matter, we note that the defendant seeks to prevail on this unpreserved constitutional claim pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), under which "[a] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . The first two steps in the *Golding* analysis address the reviewability of the claim, while the last two steps involve the merits of the claim. . . . In the absence of any one of the four *Golding* conditions, the defendant's claim will fail." (Citation omitted; internal quotation marks omitted.) *State* v. *Kirk R.*, 271 Conn. 499, 506 n.12, 857 A.2d 908 (2004).

The state concedes, and we agree, that the first two prongs of *Golding* are satisfied. The record before us is adequate for review because it contains transcripts of the relevant plea and sentencing hearings,[9] and the defendant's claim of an inadequate waiver of the right to a jury trial implicates fundamental rights of constitutional magnitude. See *State* v. *Gore*, 288 Conn. 770, 775–76 and 775 n.6, 955 A.2d 1 (2008).

Turning to the third prong of *Golding*, although the narrow focus of the defendant's claim relates to the adequacy of the waiver of a jury trial at the resentencing hearing, the broader substance of the claim involves the plea and sentencing proceedings, both preappeal and postappeal.[10] To determine whether the defendant knowingly, voluntarily and intelligently waived his right to a jury trial on the public interest determination, we must specifically address the following questions: (1) whether the defendant, as part of his original June, 2004 plea agreement and hearing with respect to part B of the information, knowingly, voluntarily and intelligently waived a jury trial on the public interest determination; and (2) if so, whether that waiver extended to the resentencing hearing held in April, 2008.

A

To answer the first question, we begin with a brief review of the persistent felony offender statute. Section 53a-40 sets forth six categories of persistent felony offenders in subsections (a) through (f), and each sub-

---

[9] We note that the only transcripts filed are from the April 20, 2007 and April 4, 2008 resentencing hearings held on remand. In the appendix to his brief, the defendant provides, however, limited transcript excerpts from the plea and sentencing hearings held on June 16, 2004, and August 23, 2004. Because the state has not contested the adequacy of the record for review, we will utilize the transcript excerpts and conclude that the first requirement for *Golding* review is satisfied.

[10] The defendant has rendered review of this claim difficult by not clearly articulating or developing it in the two pages of his brief that address the waiver issue.

section has a corresponding provision that provides for an increased sentence on the basis of two factual predicates: first, that the defendant was found to be a persistent felony offender as defined in the respective subsection and, second, that "the court is of the opinion that such person's history and character and the nature and circumstances of such person's criminal conduct indicate that extended incarceration will best serve the public interest . . . ." General Statutes (Rev. to 1999) § 53a-40 (j), as amended by P.A. 99-2, § 48; see General Statutes (Rev. to 1999) § 53a-40 (a) through (f) (categories of offenses) and (h) through (m) (sentencing provisions), as amended by P.A. 99-2, § 48.[11] The court may not impose an extended sentence unless both factual predicates are satisfied. *State* v. *Bell*, 283 Conn. 748, 803–804, 931 A.2d 198 (2007).

Significantly, under the line of cases beginning with *Apprendi* v. *New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the United States Supreme Court has held that a defendant is entitled to a jury finding on any sentencing factors that would increase his sentence beyond that approved by the jury verdict or guilty plea alone. In *State* v. *Bell*, supra, 283 Conn. 810, we examined *Apprendi* and its progeny, including *Blakely* v. *Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and held that the provision of § 53a-40 (h) requiring a *court* determination of the public interest factor was unconstitutional.[12] In so hold-

---

[11] For persistent dangerous felony offenders and persistent dangerous sexual offenders, the public interest predicate includes the consideration of an order of lifetime supervision in addition to extended incarceration. See General Statutes (Rev. to 1999) § 53a-40 (h) and (i), as amended by P.A. 99-2, § 48.

[12] Although in *State* v. *Bell*, supra, 283 Conn. 810, we addressed the question in relation to the persistent dangerous felony offender statute; see General Statutes (Rev. to 1999) § 53a-40 (d) and (h), as amended by P.A. 99-2, § 48; we note that the requirement that extended incarceration serve the public interest was a factual prerequisite to extended sentences under both the persistent dangerous felony offender statute and the persistent serious felony offender statute. *Bell* is, therefore, directly on point in the present case.

ing, we concluded that, under *Apprendi*, "the jury shall make the determination, beyond a reasonable doubt, whether, upon consideration of the relevant factors under § 53a-40 (h), extended incarceration will best serve the public interest." *State* v. *Bell*, supra, 812–13. After we decided *Bell*, the General Assembly amended § 53a-40 to excise the unconstitutional language from each of the six sentencing subsections (h) through (m)[13] and, therefore, the current statute no longer requires a public interest determination.

In the present case, it is undisputed that the trial court, and not a jury, made the public interest determination at both the 2004 and 2008 sentencing hearings.[14] Accordingly, without a valid waiver of the defendant's right to a jury trial on the public interest factor, the court's public interest determination would be invalid and, thus, the defendant would be entitled to a new sentencing proceeding. See id., 812. We must, therefore, determine whether the defendant waived his right to a jury trial on the public interest factor, on the basis of his original nolo contendere plea with respect to part

[13] See Public Acts, Spec. Sess., January, 2008, No. 08-1, § 7; see also 51 H.R. Proc., Pt. 1, 2008 Sess., pp. 21, 35–36, remarks of Representative Michael P. Lawlor (noting Governor's Task Force recommendation that public interest determination should be removed from persistent offender statute pursuant to *Bell*); 51 S. Proc., Pt. 1, 2008 Sess., p. 83, remarks of Senator John A. Kissel (noting that proposed bill "makes great strides in addressing the Connecticut Supreme Court decision in [*Bell*]"); 51 S. Proc., supra, pp. 144–45, remarks of Senator Sam S. F. Caligiuri (noting that proposed bill amends persistent offender statutes "to address a constitutional problem that was identified by the Connecticut Supreme Court").

[14] At the defendant's original sentencing hearing in August, 2004, the trial court stated that it was "of the opinion that such person's history, and character, and the nature and circumstances of such person's criminal conduct, indicate that extended incarceration will best serve the public interest." At the resentencing hearing in April, 2008, the trial court, after the state asked it to make the public interest finding on the record, stated that it again was "of the opinion that such person's history and character and the nature and circumstances of such person's criminal conduct indicate that extended incarceration will best serve the public interest."

B of the information and the subsequent canvass conducted by the court.

We conclude that the defendant's nolo contendere plea on part B of the information, and the waiver of rights that accompanied it, necessarily encompassed the public interest factor. This court has recognized that the persistent felony offender statute is "a sentence enhancement provision, and not an independent criminal offense . . . ." (Citation omitted.) *State* v. *Velasco*, 253 Conn. 210, 224, 751 A.2d 800 (2000). Indeed, "[t]he only function of the separate judicial proceeding on the defendant's status as a persistent dangerous [or serious] felon is to permit an enhanced sentence for conviction of the underlying substantive crime." *State* v. *Fullwood*, 194 Conn. 573, 587, 484 A.2d 435 (1984). By entering his plea of nolo contendere, the defendant waived his right to a jury trial under the entire persistent serious felony offender statutory scheme—a scheme exclusively related to sentence enhancement. See *State* v. *Velasco*, supra, 224 ("in pleading guilty to a persistent offender charge, the accused waives several constitutional rights, *including the right to a jury determination of ultimate facts that trigger the enhanced sentence*" [emphasis added; internal quotation marks omitted]). Under the defendant's plea, therefore, he waived his right to a jury trial, not only with respect to the factual predicate of whether he was a persistent serious felony offender, but also with respect to the issue of whether his extended incarceration was in the public interest.

The canvass conducted by the trial court on the defendant's plea in 2004, through its particular attention to the rights the defendant was waiving and concomitant increased exposure to incarceration, further establishes the scope of the defendant's waiver. Our recent decision in *State* v. *Gore*, supra, 288 Conn. 770, guides our analysis. In *State* v. *Gore*, supra, 777, we concluded "that a

defendant personally must waive the fundamental right to a jury trial, and that counsel may not make that decision as a matter of trial strategy." Pursuant to our supervisory authority, we also concluded that, when a defendant wishes to waive his right to a jury trial, "in the absence of a signed written waiver by the defendant, the trial court should engage in a brief canvass of the defendant in order to ascertain that his or her personal waiver of the fundamental right to a jury trial is made knowingly, intelligently and voluntarily. This canvass need not be overly detailed or extensive, but it should be sufficient to allow the trial court to obtain assurance that the defendant: (1) understands that he or she personally has the right to a jury trial; (2) understands that he or she possesses the authority to give up or waive the right to a jury trial; and (3) voluntarily has chosen to waive the right to a jury trial and to elect a court trial." Id., 787–89. It is with this standard in mind that we review the trial court's canvass of the defendant in the present case after he submitted his nolo contendere plea.

The trial court's canvass of the defendant proceeded in relevant part as follows:

"Q. Have you discussed this plea on this part B matter with your attorney?

"A. Yes, sir.

"Q. Okay. Are you satisfied with his advice and his representation on this matter?

"A. Yes, sir.

"Q. Okay. Has he explained to you the elements of the charge that you are pleading to?

"A. Yes. . . .

"Q. Has he further explained to you, sir, that *the maximum penalties for discharge is an increase on*

*the other underlying charges from 'C' felonies to 'B' felonies, the next highest, most serious felony? That's the effect of this plea.* Do you understand that, sir?

"A. Yes.

"Q. So, the maximum exposure, sir—I just want to make sure you understand this. The maximum exposure for the charges when the jury brought in the verdict this morning, they are 'C' felonies, which is a maximum of ten years. *By entering the plea here, this exposure goes from ten years to twenty years on each of the charges,* the next most serious level of felony. Do you understand that?

"A. Yes. . . .

"Q. Okay. Do you realize by entering the plea, sir, you are giving up certain rights: the right to continue to remain silent, the right to continue to plead not guilty, *the right to have [a] court or a jury trial,* the right to confront the state's witnesses and to present your own witnesses, and the right to have the state prove you guilty beyond a reasonable doubt. By entering this plea, sir, you give up all of these rights. Do you understand that?

"A. (No audible response)

"Q. These are the rights you are giving up, sir, by entering this plea.

"A. Yes. . . .

"Q. Okay. Again, you understand, sir, you're giving up all these rights for entering the plea?

"A. Yes." (Emphasis added.)

Beyond just meeting the threshold requirement for a constitutional canvass of the defendant, we conclude that the trial court also provided the defendant with ample disclosure of the risks to which he had subjected

himself. During the canvass, the trial court explicitly identified the defendant's right to a jury trial as a right that he was surrendering. The court also specifically noted the impact that his plea had on the felony classification for sentencing purposes. Finally, the court appropriately highlighted for the defendant the increase in his exposure to incarceration as a consequence of his decision to enter a nolo contendere plea. This canvass plainly meets the standards set forth in *State* v. *Gore*, supra, 288 Conn. 788–89, for a knowing, voluntary and intelligent waiver of the right to a jury trial.

Indeed, this conclusion is consistent with our recent decision in *Bell*. In *State* v. *Bell*, supra, 283 Conn. 758, a jury had convicted the defendant on assault and weapons charges and, after further proceedings, found him guilty on part B of the information charging him as a persistent dangerous felony offender. At a later proceeding, the trial court made the factual finding that extended incarceration would best serve the public interest and imposed an enhanced sentence. Id. On appeal, we determined that the defendant was entitled to a new sentencing proceeding so that a jury, and not the court, could determine whether extended incarceration would best serve the public interest. Id., 812. Significantly, unlike in the present case, the defendant in *Bell* never submitted a guilty or nolo contendere plea on part B of the information and, therefore, had not been canvassed to determine whether he was waiving his right to a jury trial on the public interest determination. Indeed, we recognized that distinction and emphasized that, "in those cases in which the defendant chooses to waive his right to a jury trial under § 53a-40, *the court may continue to make the requisite finding.*" (Emphasis added.) Id.

To the extent that the defendant herein challenges other deficiencies in the canvass, we conclude that the trial court's canvass of the defendant satisfies the other

requirements for a canvass of a defendant pleading nolo contendere or guilty.[15] "We acknowledge that, [i]t is well established that a plea of guilty cannot be voluntary in the sense that it constitutes an intelligent admission that the accused committed the offense unless the accused has received real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process. . . . In determining whether the defendant had real notice of the charge against him, however, [a] court must consider the totality of the circumstances surrounding the entry of a plea." (Citation omitted; internal quotation marks omitted.) *State* v. *Reid*, 277 Conn. 764, 782, 894 A.2d 963 (2006). However, "[o]ur courts have stopped short of adopting a per se rule that notice of the true nature of the charge always requires the court to give a description of every element of the offense charged. . . . Rather, we have held that, [u]nder *Henderson* v. *Morgan*, 426 U.S. 637, 647, 96 S. Ct. 2253, 49 L. Ed. 2d 108 (1976), even without an express statement by the court of the elements of the crimes charged, it is appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." (Citation omitted; internal quotation marks omitted.) *State* v. *Reid*, supra, 783. In the present case, the defendant, through the trial court's thorough canvass, acknowledged his understanding of the consequences of his plea—namely, exposure to extended incarceration—and, thus "received real notice of the true nature of the charge against him . . . ." (Internal quotation marks omitted.) Id., 782. Put differently, the defendant's uncontested understanding of the consequences of his plea overcame the absence of specific

---

[15] "A plea of nolo contendere has the same legal effect as a plea of guilty on all further proceedings within the indictment." (Internal quotation marks omitted.) *State* v. *Madera*, 198 Conn. 92, 97 n.5, 503 A.2d 136 (1985).

disclosure of the defendant's particular right to a jury trial on the public interest determination.

Moreover, we disagree with the defendant's reliance on *State* v. *Fairbanks*, 688 N.W.2d 333, 336 (Minn. App. 2004), review denied, 2005 Minn. LEXIS 777 (December 13, 2005), wherein the Minnesota Court of Appeals concluded that the defendant's waiver of the right to a jury trial on charges of kidnapping and assault did not permit the court to find facts supporting an aggravated sentence. *Fairbanks* is inapposite because it addressed the scope of a jury trial waiver for the *underlying criminal offense*, and the court therein concluded that the defendant had not waived a jury trial for the *sentencing* phase of the proceedings by waiving a jury trial during the *guilt* phase of the proceedings. Because the defendant in the present case pleaded nolo contendere in response to the charge submitted under the persistent serious felony offender statute, which is "a sentence enhancement provision, and not an independent criminal offense"; *State* v. *Velasco*, supra, 253 Conn. 224; *Fairbanks* and similar cases[16] are not persuasive herein. Accordingly, we conclude that the 2004 canvass included a jury trial waiver of both the persistent serious felony offender charge and the public interest requirement.

---

[16] Other states to address the issue of whether a waiver of the right to a jury trial for the underlying offense waives the right to a jury trial for sentencing, have reached the same conclusion. See, e.g., *State* v. *Ward*, 211 Ariz. 158, 162–65, 118 P.3d 1122 (App. 2005) (guilty plea on kidnapping and theft charges did not waive required jury trial on aggravating factors), review denied, 2006 Ariz. LEXIS 52 (Ariz. April 20, 2006); *State* v. *Schofield*, 895 A.2d 927, 929–31 (Me. 2005) (waiver of right to jury trial on depraved indifference murder and manslaughter charges did not extend to findings for increased sentence); *State* v. *King*, 142 N.M. 699, 704, 168 P.3d 1123 (App.) (guilty plea on sexual assault charges was not constitutional waiver of right to jury trial on sentence enhancement factors), cert. quashed, 143 N.M. 157, 173 P.3d 764 (2007); *State* v. *Williams*, 197 Or. App. 21, 25, 104 P.3d 1151 (2005) ("[w]e cannot assume that [the] defendant, by waiving a jury trial on the burglary charge, intended to waive the right to have a jury determine the facts required for imposition of an enhanced dangerous offender sentence").

B

Having established that the scope of the defendant's 2004 canvass and nolo contendere plea encompassed the waiver of a jury finding on the public interest requirement, we turn next to the question of whether that waiver remained in effect, or was reasserted, during the resentencing proceedings in 2008. We have not previously addressed the issue of whether a jury trial waiver made during a plea pursuant to part B of an information remains valid at resentencing following the reversal of one of multiple convictions. We have, however, considered the issue in the analogous context of the validity of a jury trial waiver on a substitute information charging a defendant with a lesser offense. In *State* v. *Williams*, 205 Conn. 456, 534 A.2d 230 (1987), the defendant, charged with burglary in the first degree, originally had waived his right to a jury trial. On appeal, he argued that, even if his election to waive a jury trial was a knowing and intelligent waiver, that waiver did not apply following the filing of the substitute information, which charged him with burglary in the second degree, a charge that was not a lesser included offense of the original charge. Id., 463. We rejected the defendant's claim that the difference between burglary in the first degree and burglary in the second degree—namely, that burglary in the second degree is committed at night—rendered the defendant's initial waiver invalid as to the substitute information. Id., 465. We reasoned that the difference between a lesser crime and a lesser included crime was insignificant for the purpose of notice and that the defendant's failure to object at trial in essence endorsed the validity of the original waiver as to the substitute information charge. Id., 465–66. In those circumstances, we concluded that the intervening circumstance of the filing of a substitute information did not abrogate the defendant's original waiver.

Under the facts of the case before us now, "[o]ur task . . . is to determine whether the totality of the record furnishes sufficient assurance of a constitutionally valid waiver of the right to a jury trial." *State* v. *Gore*, supra, 288 Conn. 776–77. We conclude that the defendant's failure to raise this issue on the original appeal of his conviction, commenced post-*Blakely*,[17] his failure to raise this issue at the resentencing proceeding, held post-*Bell*, and his position, before he filed this appeal, contesting resentencing on the remaining charge of risk of injury to a child and arguing for the retention of the original risk of injury sentence—a sentence that *included* sentence enhancement—conclusively establish that the defendant's original waiver remained valid during his resentencing hearing. The circumstances presented here firmly establish that the defendant's waiver was not abrogated by the intervening circumstances.

The defendant contends, however, that courts do not apply preremand waivers to postremand proceedings. We disagree because the cases that the defendant cites hold only that a waiver does not apply to a *retrial* on the original criminal charge as a result of a remand or the grant of a posttrial motion. See, e.g., *People* v. *Solis*, 66 Cal. App. 4th 62, 77 Cal. Rptr. 2d 570 (1998) (waiver did not apply to retrial ordered after appeal); *People* v. *Hamm*, 100 Mich. App. 429, 298 N.W.2d 896 (1980)

---

[17] In *Blakely* v. *Washington*, supra, 542 U.S. 305, the Supreme Court concluded that Washington's sentencing reform act, which permitted a trial court to enhance a defendant's sentence after determining that he had acted with, inter alia, " 'deliberate cruelty,' " "violated the precepts of [*Apprendi* v. *New Jersey*, supra, 530 U.S. 490] because the trial court could not have enhanced the defendant's sentence on the basis of the facts admitted in the defendant's plea" of guilty. *State* v. *Bell*, supra, 283 Conn. 791; see also *Blakely* v. *Washington*, supra, 303 (emphasizing that "the 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*" [emphasis in original]).

(waiver did not apply to second trial after first murder trial was declared mistrial). These cases are distinguishable from the present case because the postremand proceeding herein was not a retrial on the defendant's guilt but, rather, a resentencing hearing held as the result of a remand that was limited in nature and did not implicate the validity of the nolo contendere plea to part B of the information. Thus, we conclude that the defendant has failed to establish that he suffered from a constitutional violation and, therefore, he is unable to prevail under the third prong of *Golding*.

The judgment is affirmed.

In this opinion the other justices concurred.